UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KISUK CHA,

Plaintiff,

-against-

HOOTERS OF AMERICA, LLC,
STRIX, LLC (d/b/a Hooters of Long Island,
d/b/a Hooters Fresh Meadows),
WILLIAM HARLEY and ANTHONY DeMARCO
(d/b/a I.S. Wings, LLC), "220 SHENIKA," and
"JANE DOE",

Defendants.

**CV 12 - 04523**

SUMMONS WITH
VERIFIED COMPLAINT

IRIZARRY, J.

AZRACK, M.J.

Docket No.: 12-civ-

---

## VERIFIED COMPLAINT

KISUK CHA, by and through his attorneys, Law Offices of Daniel D. Baek, P.C,

respectfully alleges upon personal knowledge as to his own acts and status, and upon information

and belief as to all other matters:

### PRELIMINARY STATEMENT

1.     Plaintiff Kisuk Cha (hereinafter "Mr. Cha") is a person of Korean ancestry who is

entitled to go into a place of public accommodation, like Hooters, without being singled out,

branded, and humiliated by a racial slur.

2.     On or about July 1, 2012, Mr. Cha received the shock of his life when his two

Hooters' receipts identified him and his companion as "Chinx," presumably a plural form of

what's widely known as the "N" word for Asians. [Exhibit A – Hooters Fresh Meadows

receipts].

3.     Mr. Cha seeks redress for racial discrimination inflicted upon him and suffered by him in violation of the laws of the United States and the State of New York while he was lawfully patronizing an establishment holding itself out to be Hooters.

4.     Mr. Cha brings forth this action pursuant to Title II Civil Rights Act of 1964, 42 U.S.C. §2000a(a) *et seq.*, 42 U.S.C. §§ 1981, 1985, and 1988, and respectfully requests this Court's pendant jurisdiction over the state claims pursuant to § 296.2 of the New York State Human Rights Law, N.Y. Executive Law, Article 15, and the common law torts of intentional and/or negligent infliction of emotional distress.

**THE PARTIES**

5.     Mr. Cha is an ethnic Korean who resides in the state of Pennsylvania, but makes frequent trips to New York to visit his girlfriend.

6.     Defendant Hooters of America, LLC is a national chain headquartered in Atlanta, Georgia and is not registered to do business in New York State. Defendant Hooters of America, LLC claims that it has no responsibility for these events as the restaurant in question is a franchisee, I.S. Wings, LLC. [Exhibit B – Hooters of America, LLC's response to Attorney Daniel D. Baek's initial demand].

7.     Defendant STRIX, LLC is listed on the Hooters Long Island website indicated on the two receipts. It is also listed in the fax header in a correspondence by the attorney for I.S. Wings, LLC/Hooters Fresh Meadows, Edward G. Cabe [Exhibit C – July 20, 2012 Fax from Law Office of Edward G. McCabe].  It is registered as a foreign limited liability company from Delaware and is doing business in New York as Hooters of Long Island and Hooters of Fresh Meadows, though this is not reflected in their New York registration. [Exhibit D – New York State Department of State Division of Corporations Entity Information]. Hooters of Long Island

and Hooters of Fresh Meadows hold themselves out to be part of the national Hooters chain, and neither is registered to do business in New York State.

8.     Defendants William Harley and Anthony DeMarco are sued in their individual capacities because their entity, I.S. Wings, LLC, is not registered to do business in New York State, nor does it have an internet presence.

9.     Defendant "220 Shenika" is listed as the plaintiff's server at Hooters and is, upon information and belief, responsible for entering the racial slur into the receipts.

10.    Defendant "Jane Doe" is an unknown employee of Hooters who conspired with "220 Shenika" to violate plaintiff's civil rights.

## JURISDICTION AND VENUE

11.    Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), 1367 (supplemental), 2202 (injunctive relief), and 42 U.S.C. §§1981, 1985, and 1988 (civil rights).

12.    Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391(b), in that Defendants maintain the establishment in question within this judicial district, and the majority of the events comprising the federal claims have taken place within this judicial district.

## FACTS

13.    On or about July 1, 2012, Mr. Kisuk Cha and his girlfriend walked into Hooters in Fresh Meadows, New York, and placed their order for buffalo shrimp and ten piece wings to go, and Mr. Cha swiped his credit card for $21.75.

14.    Mr. Cha and his girlfriend became uncomfortable when they noticed their server, either "220 Shenika" or Jane Doe, gawking at them, looking at the screen, and giggling.

15.     Kisuk Cha examined his two receipts that he received, and noticed that he and his companion were identified as "Chinx" and the server was identified as "220 Shenika."

16.     When Kisuk Cha saw the racial slur, he was shocked, stunned, mortified, humiliated and severely distressed. He wanted to confront his server but was paralyzed with anguish. He could not eat the food he had just bought as his stomach was churning and he could not be sure that someone did not spit in his food. He was so overwhelmed that he just wanted to go to bed to sleep, but was too angry to do so. This incident has continued to cause him mental anguish. He is haunted by the ridiculing giggles and stares of his persecutor. He does not feel welcome at Hooters and indeed questions whether he is welcomed at any non-Korean establishments.

17.     Plaintiff is informed and believes, and on that basis alleges, that any individual viewing these receipts, including his credit card company, could see the published racial slur was derogatory and discriminatory against Asians in general.

18.     Plaintiff is informed and believes, and on that basis alleges, that no racial slurs against Caucasian patrons or any other racial or ethnic group were printed on other receipts.

19.     This shocking discrimination aimed at Mr. Cha and his companion is not acceptable in any place of public accommodation, and a civilized society cannot tolerate such behavior.

20.     This act was calculated to make Mr. Cha and his companion's experience so intolerable and unequal as to bar him and others similarly situated from the premises in the future in the same manner as if they had been forcibly removed.

21.     This act had the further effect of causing Mr. Cha apprehension in using his credit card for further public accommodations purchases for fear of being called another racial slur or other humiliating name.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Federal Race Discrimination in Violation of 42 U.S.C. §2000a(a) *et seq.*)

22.     Plaintiff repeats and realleges, as fully as if set forth herein at length, the facts contained in paragraphs 1-21 above.

23.     42 U.S.C. §2000a provides that all persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation without discrimination or segregation on the grounds of race.

24.     Hooters is a public accommodation under Title II of the Civil Rights Act of 1964, 42 U.S.C. §2000a(b)(2).

25.     The operation of Hooters affects commerce within the meaning of 42 U.S.C. §2000a(c)(2).

26.     Defendants denied plaintiff Kisuk Cha and his companion full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of Hooters Fresh Meadows because of his race when a Hooters employee or employees created, maintained, printed, published, and distributed receipts bearing an anti-Asian racial epithet, while similarly situated non-Asian customers were, upon information and belief, given receipts with no such epithets.

27.     Defendants have implemented a policy or practice of denying Asian customers, including Cha and his companion, on account of race, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of Hooters on the same basis as it makes such available to non-Asian customers. This policy has been carried out by denying

Asian-American customers, including Mr. Cha and his companion, equal treatment in terms of the derogatory slur displayed on the Hooters' computer screen , printed on receipts, and published to the plaintiff, other Hooters' employees, and the plaintiff's credit card company. Defendants' acts were calculated, and had the effect of, discouraging Asian customers, including plaintiff Cha, from visiting Hooters.

28.     Plaintiff alleges, upon information and belief, that defendants' conduct constitutes both disparate treatment and disparate impact in deliberate and substantial disregard of plaintiff Kisuk Cha's fundamental rights.

29.     In addition, as a direct and proximate result of defendants' conduct, plaintiff has suffered and continues to suffer injury, loss, and damages in an amount according to proof and is entitled to recover from defendants money damages, costs and attorneys fees pursuant to §1988.

### AS AND FOR A SECOND CAUSE OF ACTION
**(Federal Race Discrimination in Violation of 42 U.S.C. §1981 *et seq.*)**

30.     Plaintiff repeats and realleges, as fully as if set forth herein at length, the facts contained in paragraphs 1-29 above.

31.     §1981 provides that all persons shall have the same right to make and enforce contracts, and to do so freely of racial discrimination and harassment.

32.     Hooters is a place of business that offers members of the public the opportunity to contract for food, beverage, and services, and the attendant entertainment and social benefits thereto.

33.     Moreover, Hooters accepts credit cards, and the plaintiff used his credit card to pay for his food at Hooters.

34.     The swipe of the plaintiff's credit card at Hooters constituted a contract between Mr. Cha and his credit card company, Visa.

35.     Upon information and belief, defendants intentionally denied him the same rights defendants afford to other non-Asian persons to make and enforce such contracts, by intentionally engaging in racial discrimination against plaintiff in violation of §1981 by implementing, sustaining, and failing to monitor a pattern and practice of refusing to contract with Mr. Cha on equal terms when Hooter's employee created racially offensive and discriminatory receipts, at least one of which was sent to the credit card company.

36.     Upon information and belief, defendants were motivated by racial animus when they refused to contract on equal terms with Mr. Cha on the basis of his race.

37.     As a direct and proximate result of defendants' conduct, the plaintiff has suffered and continues to suffer mental anguish, embarrassment, humiliation, and apprehension, and is entitled to compensation for such injuries as well as other damages to be proven at trial, and attorneys' fees pursuant to §1988.

### AS AND FOR A THIRD CAUSE OF ACTION
**(Conspiracy in Violation of 42 U.S.C. § 1985, *et seq.*)**

38.     Plaintiff repeats and realleges, as fully as if set forth herein at length, the facts contained in paragraphs 1-37 above.

39.     Defendants' acts as alleged herein constitute racial discrimination under § 1985 because, *inter alia*, two or more defendants conspired to deprive plaintiff Kisuk Cha of the equal protection, privileges, and immunities of the laws.

40.     Plaintiff witnessed "220 Shenika" or Jane Doe who saw the racial slur entered on the computer screen, did nothing to change or stop it, and joined in on the ridicule and humiliation to make plaintiff and his companion the cruel butt of their joke.

41.     The server printed and distributed copies of those receipts to plaintiff and his credit card with full knowledge of the contents, and with full knowledge others could view the content.

42.     Upon information and belief, defendants' conduct was deliberate and with reckless disregard to Mr. Cha's rights.

43.     Mr. Cha was injured by this conspiracy and deprived of his rights and privileges under the law.

44.     As a direct and proximate result of defendants' conduct, plaintiff continues to suffer mental anguish, embarrassment, humiliation, and apprehension, and is entitled to compensation for such injuries as well as other damages to be proven at trial, and attorneys' fees pursuant to §1988.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Violation of § 296.2 of the New York State Human Rights Law)

45.     Plaintiff repeats and realleges, as fully as if set forth herein at length, the facts contained in paragraphs 1-44 above.

46.     At all times Hooters was a business establishment within the meaning of New York State Human Rights Law.

47.     Defendants denied plaintiff and his companion equal enjoyment of the accommodations when they published and circulated written communication that had the effect to make plaintiff and others of his race not welcome in Hooters.

48.     Defendants intentionally discriminated against plaintiff on the grounds of his race in a business establishment by denying him the full enjoyment of the services, advantages, accommodations, facilities, and privileges provided to other persons.

49.     As a direct and proximate result of defendants' conduct, the plaintiff has suffered and continues to suffer mental anguish, embarrassment, humiliation, and apprehension, and is entitled to compensation for such injuries as well as other damages to be proven at trial.

50.     Defendants' actions were done with malice, deception, and oppression and in reckless disregard for Mr. Cha's rights as a human being and guest of this State, for which an award of punitive damages is appropriate along with all other relief to which he is entitled.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Common Law Tort of Intentional Infliction of Emotional Distress)

51.     Plaintiff repeats and realleges, as fully as if set forth herein at length, the facts contained in paragraphs 1-50 above.

52.     Defendants, by and through its employee or employees, engaged in the shockingly outrageous conduct alleged herein intentionally and maliciously for the purpose of causing Mr. Cha to suffer humiliation, mental anguish, apprehension, and emotional distress.

53.     Defendants' conduct is the type that cannot be tolerated in a civilized society. Defendants used and/or ratified a highly offensive and derogatory racial slur which is akin to the "N" word for Asians.  This slur was entered into their computer system, shared with other employees who then joined in on the mockery and oppression, printed on receipts, and published to plaintiff, other employees, and to the credit card company.

54.     Defendants' actions were in reckless disregard for plaintiff's feelings, dignity and fundamental rights as a human being.

55.     As an actual and proximate cause of these outrageous acts by defendants conducted without due care or common decency, plaintiff suffered and continues to suffer humiliation, mental anguish, apprehension, and emotional distress.

56.     In conducting the alleged acts herein, Hooters' employees were acting within the course and scope of their employment with William Harley, Anthony DeMarko, and the corporate defendants.

57.     William Harley, Anthony DeMarko, and the corporate defendants are liable for the acts of their employees, agents, and/or franchisees.

58.     As a direct, proximate, and legal result of the conduct of defendants' failure to meet the applicable standards of care due to one of its patrons, and in breach of their duty to the plaintiff, Kisuk Cha has suffered and continues to suffer injury, mental anguish, severe emotional distress, harm, and damages, and therefore is entitled to recover damages from defendants, according to proof at trial.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Common Law Tort of Negligent Infliction of Emotional Distress)

59.     Plaintiff repeats and realleges, as fully as if set forth herein at length, the facts contained in paragraphs 1-58 above.

60.     Defendants owed plaintiff a duty to exercise reasonable care in their regulation and management of the Hooters Fresh Meadows establishment, including the duty to exercise reasonable care in hiring and/or supervising and/or contracting with those acting on their behalf and at their direction and under their name in serving customers at this establishment.

61.     Defendants negligently breached their duty of care to Kisuk Cha so as to fall well below the applicable standard of care and directly, proximately, and legally caused harm to plaintiff as described herein, specifically by failing to comply with the federal and state civil rights laws that mandate equal treatment and prohibit racial discrimination, and by failing to adequately hire and/or supervise and/or contract with those acting on their behalf and at their direction and under their name in serving customers at this establishment.

62.    Defendants knew or should have known that their failure to exercise due care during the times in question alleged herein, and their failure to train and supervise employees or agents, or their failure to conduct due diligence in the screening of their franchisees or agents, their entry of the racial slur into the computer system, the display of that slur on the computer screen, shared with other employee who then joined in on the mockery and oppression, printing and handing the receipts bearing the racial slur to plaintiff and plaintiff's credit card company would cause Mr. Cha severe emotional distress.

63.    In conducting themselves as alleged herein, Hooters employees were acting within the scope of their employment with William Harley, Anthony DeMarko, and the corporate defendants.

64.    William Harley, Anthony DeMarko, and the corporate defendants are liable for the acts of its employees, agents, and/or franchisees.

65.    As a direct, proximate, and legal result of the conduct of defendants' failure to meet the applicable standards of care due to one of its patrons, and in breach of their duty to the plaintiff, Kisuk Cha has suffered and continues to suffer injury, mental anguish, severe emotional distress, harm, and damages, and therefore is entitled to recover damages from defendants, according to proof at trial.

## JURY DEMAND

66.    Plaintiff hereby demands trial by jury of all issues properly triable thereby.

## PRAYER FOR RELIEF

WHEREFORE plaintiff Kisuk Cha prays for judgment against defendants as follows:

1.      Issuing a declaration that Defendants have violated the Plaintiff's Title II rights under the Civil Rights Act of 1964, 42 U.S.C. §2000a, *et seq.*, his rights under 42 U.S.C. § 1981, *et seq.*, and his rights under 42 U.S.C. § 1985 *et seq.*;

2.      Enjoining defendants, their officers, employees, successors, franchisees, agents and all other persons in active concert or participation with any of them, from engaging in any act or practice which, on the basis of race, denies or abridges any rights secured by the Civil Rights Act of 1964, 42 U.S.C. §2000a, *et seq.*, the rights under 42 U.S.C. § 1981, *et seq.,* and the rights under 42 U.S.C. § 1985 *et seq.* to prevent defendants from so acting in the future;

3.      Awarding plaintiff damages incurred as a result of these violations to his federal, state, and common law rights;

4.      Awarding punitive damages for the egregious conduct that no civilized society can tolerate;

5.      Awarding §1988 attorneys' fees;

6.      Awarding plaintiff's costs and disbursements; *and*

7.      Granting such other and further relief as the Court may deem just, proper and equitable.

Dated:      Queens, New York
            August 15, 2012

By:_____
JULIE MILNER

Julie Milner (JM1227)
Of Counsel to Plaintiff's Attorneys:

_____
Daniel D. Baek (DB6632)
LAW OFFICES OF DANIEL D. BAEK, P.C.
42-40 Bell Blvd., Suite 208
Bayside, NY 11361
T. (718) 225-7900
F. (877) 321-3219

## VERIFICATION

STATE OF NEW YORK      }
                       } ss:
COUNTY OF QUEENS       }


KISUK CHA, being duly sworn deposes and says:

I am the plaintiff in this action.  I have read the foregoing complaint and know the

contents thereof to be true based upon my knowledge, except as to matters stated to be alleged on

information and belief, and to those matters I believe them to be true.


_____
KISUK CHA

Sworn to before me this
_15th_ day of August, 2012.

_____
Notary Public


**DANIEL D. BAEK**
Notary Public, State of New York
No. 02BA6189481
Qualified in Queens County
Commission Expires June 23, 2016

# Exhibit A

**Hooters Fresh Meadows Receipts**



FRESH MEADOWS, NY

\* \* \* \* \* \* \*
61-09 190TH Street
Fresh Meadows, NY 11365
Phone#: 718-454-1062
www.hooters11.com

220 Shenika

Chk 4943          CHINX          Gst 2
            Jul01'12 10:27PM

TO-GO
1 10 BuffShrmp                    9.99
1 10 PC WINGS                     9.99

Subtotal                         19.98
Tax                               1.77
Total                            21.75

\* \* \* \* \* \* \*
We have the MLB package watch
all your favorite teams here.
Let Hooters host your parties.
Ask about our catering menu.
Bring this receipt on your next
visit and receive a 10% discount.

Hooters Makes You Happy!



FRESH MEADOWS, NY

\* \* \* \* \* \* \*
61-09 190TH Street
Fresh Meadows, NY 11365
Phone#: 718-454-1062
www.hooters11.com
Date:        Jul01'12 10:38PM
Card Type:   Visa
Acct #:      XXXXXXXXXXXXX3640
Card Entry:  SWIPED
Trans Type:  PURCHASE
Trans Key:   CIC006539638947
Auth Code:   901280
Check:       4943
Check ID:    CHINX
Server:      220 Shenika

Subtotal           21.75

Tip: _____

Total: _____

Signature _____

I agree to pay above total
according to my card issuer
agreement.
Customer
Copy

# Exhibit B

**Hooters of America, LLC's Response**

 of America, LLC

July 18, 2012

Via US MAIL to:

Daniel D. Baek, P.C.
42-40 Bell Boulevard, Suite 208
Bayside, NY 11361

Via Facsimile to: (877) 321-3219

RE:    Hooters of Fresh Meadows

Dear Sir:

Thank you for your correspondence regarding this situation.

Hooters of America, LLC ("HOA") is an international corporation that recognizes the importance of diversity and seeks to cultivate a culture within the brand that welcomes diversity in its workforce, suppliers, customers and the global marketplace. We are committed to our non-harassment and non-discrimination policies, and take our legal training of these matters seriously.

We are disappointed to hear of this incident and do not want to diminish the serious nature of the complaint, however, we wish to make you aware that HOA is a franchisor of restaurants and the restaurant in question is operated by independently licensed franchisee, I.S. Wings, LLC ("I.S."). Because this is a franchised relationship, the franchisee is responsible for any and all legal claims arising out of the operation of its restaurants. HOA is not, and never has been, an employer of I.S., its affiliates or employees. Therefore, please contact the franchisee to resolve this dispute.

We believe this incident to be isolated, and is in no way indicative of the brand as a whole. We trust that you will resolve this matter with I.S. The correct contact information for the franchisee is listed below.

Sincerely,
HOOTERS OF AMERICA, LLC

Claudia Koeppel Levitas
General Counsel
(770) 799-2302

Cc: Corporate File

William Harley and Anthony DeMarco
I.S. Wings, LLC
21 Greene Avenue
Amityville, NY 11701

# Exhibit C

**Fax from Law Office of Edward G. McCabe**

# EDWARD G. McCABE, ESQ.
## 21 Greene Avenue
## Amityville, New York 11701

| | |
|---|---|
| To: | Daniel D. Baek, Esq. |
| Of: | Daniel D. Baek PC |
| Tel No. | 718-225-7900 |
| Fax No. | 877-321-3219 |
| From: | Edward G. McCabe, Esq. |
| Tel No. | 516-506-1154 |
| Fax No. | 631-206-9197 |
| Date: | July 20, 2012 |
| Re: | Hooters of Fresh Meadow |
| Message: | Attached Letter |



**Law Office of Edward G. McCabe**

July 20, 2012

**Via Facsimile (877) 321-3219**
Daniel D. Baek, Esq.
42-40 Bell Blvd., Suite 208
Bayside, New York 11361

Re: Hooters Restaurant of Fresh Meadows

Dear Mr. Baek:

Please be advised that the undersigned has been retained to investigate the allegations set forth in your letter of July 17, 2012. The management of the Fresh Meadows Hooters ("Hooters") believes that the conduct of the employee who engaged in an egregious act was deplorable, cannot be tolerated and requires immediate termination.

Hooters performs a one on one orientation for each employee wherein that particular new employee is instructed in sensitivity training particularly in the area of race, creed and age. Additionally, each year an independent consultant provides classes to all employees and management concerning harassment including the need to be sensitive concerning the treatment of others. The employees are each required to review and execute a "new hire packet" and "employee manual" which details our policy absolutely prohibiting discriminatory conduct. The manuals are individually reviewed with each employee. It is my understanding that there have been no prior incidents of a similar nature and we believe, that while deeply offensive, it does not reflect the manner in which the restaurant is operated.

To date, the employee who is identified on the customer receipt has denied entering the offensive statement. It is possible, but unlikely, that the entry was made by another employee using her entry code. I would therefore request that your client provide me with a description of the person who served them on the night in question.

I thank you for your attention herein.

Very truly yours,
Edward G. McCabe

Edward G. McCabe, Esq.

21 Greene Avenue
Amityville, New York 11701

516-506-1154
631-206-9197
emccabelaw@hotmail.com

# Exhibit D

**NYS Dep't of State Div. of Corporations Entity Information**

# NYS Department of State

## Division of Corporations

## Entity Information

The information contained in this database is current through August 10, 2012.

Selected Entity Name: STRIX RESTAURANT GROUP

### Selected Entity Status Information

**Current Entity Name:** STRIX, LLC

**DOS ID #:** 3277764

**Initial DOS Filing Date:** NOVEMBER 07, 2005

**County:** NASSAU

**Jurisdiction:** DELAWARE

**Entity Type:** FOREIGN LIMITED LIABILITY COMPANY

**Current Entity Status:** ACTIVE

### Selected Entity Address Information

**DOS Process** (Address to which DOS will mail process if accepted on behalf of the entity)

STRIX, LLC
1740 HEMPSTEAD TURNPIKE
E MEADOW, NEW YORK, 11554

**Registered Agent**

NONE

This office does not require or maintain information regarding the names and addresses of members or managers of nonprofessional limited liability companies. Professional limited liability companies must include the name(s) and address(es) of the original members, however this information is not recorded and only available by viewing the certificate.

### *Stock Information

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| | No Information Available | |

*Stock information is applicable to domestic business corporations.

## Name History

| Filing Date | Name Type | Entity Name |
|---|---|---|
| NOV 07, 2005 | Fictitious | STRIX RESTAURANT GROUP |
| NOV 07, 2005 | Actual | STRIX, LLC |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

**NOTE:** New York State does not issue organizational identification numbers.